UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BEATRIZ GRACIELA ZUBIETA
LEITES,

                Petitioner,

-vs-                                                   Case No. 6:07-cv-2004-Orl-19DAB

GUILLERMO LIZASOAIN
MENDIBURU,

                Respondent.
_____

# ORDER

This case comes before the Court on the following:

1. Beatriz Graciela Zubieta Leites' Petition For Return Of Child Pursuant To International Treaty And Federal Statute (Doc. No. 1, filed Dec. 19, 2007);

2. Petitioner's Memorandum In Support Of Return Petition (Doc. No. 2, filed Dec. 19, 2007);

3. Petitioner's Notice Of Filing Exhibits To Declaration Of Beatriz Graciela Zubieta Leites (Doc. No. 4, filed Dec. 19, 2007);

4. Guillermo Lizasoain Mendiburu's Response To Petition For Return Of Child Pursuant To International Treaty And Federal Statute (Doc. No. 24, filed Jan. 3, 2008); and

5. Respondent's Motion For 'In Camera' Examination Of Minor Children (Doc. No. 25, filed Jan. 3, 2008).

**Procedural History**

Petitioner Beatriz Graciela Zubieta Leites filed a Petition with this Court for the return of her daughter, the minor child M.L.Z. (Doc. No. 1 at p. 1.) Petitioner alleged that Respondent Guillermo Lizasoain Mendiburu, her ex-husband and father of M.L.Z., wrongfully removed M.L.Z. from Argentina on or about July 22, 2007. (*Id.* at p. 3, ¶ 8.) Petitioner asserted that Respondent wrongfully retained M.L.Z. at his residence in Deltona, Florida. (*Id* ¶ 7.) Petitioner moved this Court to: (1) enter an Order directing Respondent to show cause why the Petition should not be granted; (2) enter an *ex parte* Temporary Restraining Order prohibiting Respondent from removing M.L.Z. from the jurisdiction of the Court during these proceedings; (3) promptly schedule a show cause hearing and order Respondent to appear with M.L.Z.; and (4) enter a final order requiring Respondent to return M.L.Z. to Petitioner and to pay all costs incurred by Petitioner in seeking the return of M.L.Z. (*Id.* at pp. 5-6.)

The Court granted Petitioner's Motion for a Temporary Restraining Order on December 20, 2007. (Doc. No. 7.) The Court also scheduled a hearing for January 4, 2008 ("the Hearing") and ordered that Respondent should be prepared to show cause why the Petition should not be granted. (*Id.* at p. 8.) Subsequently, Respondent filed an Answer to the Petition and asserted two affirmative defenses. (Doc. No. 24.) Respondent also moved the Court to conduct an *in camera* examination of the minor children. (Doc. No. 25.) At the hearing, both parties appeared and were represented by counsel. M.L.Z. was in attendance though not present in the courtroom.

The parties stipulated to the Court's jurisdiction and also to the applicability of the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11 (2006). The

parties also stipulated to the prima facie case of wrongful retainment under the Act and agreed that the only issue was the applicability of the two affirmative defenses asserted by Respondent.

**Findings of Fact**

**I.     Marriage and Divorce**

Petitioner was married to Respondent in 1989.  She is the natural mother of M.L.Z., who was born on October 4, 1994, and M.A.L., who was born on November 30, 1991.  The family lived in Argentina until December 20, 1999, at which time they moved to Florida for Respondent's job.  Petitioner traveled back to Argentina from time to time until December 2001 when she remained with the family in Florida until September 2003.

Petitioner moved back to Argentina with her daughters on September 11, 2003.  Petitioner and Respondent divorced in October 2003, and the Final Judgment of Dissolution of Marriage was issued in Broward County, Florida.  (Doc. No. 4-2 at pp. 4-5.)  She and Respondent also entered a Marital Settlement Agreement which indicated that the primary residential parent of both children would be Petitioner and that she and the children would live in Argentina.  (Doc. No. 4-2 at pp. 6-15.)  The Agreement further stated: "The Father is staying in the United States and will have visitation with the minor children any time he is able to travel to Argentina.  The minor children shall spend vacations and summer time with the Father any place Father resides."  (*Id.* at p. 12.)  Both parties voluntarily agreed to this custody and visitation arrangement.

Upon returning to Argentina, Petitioner moved an Argentine Court to validate the Final Judgment and Settlement Agreement that she obtained in Florida.  The Court in Argentina upheld the Final Judgment granting Petitioner and Respondent's divorce and confirmed the terms of the Settlement Agreement.  (Doc. No. 4-2 at pp. 16-26.)

### II.     Time in Argentina

Once in Argentina, Petitioner arranged for M.L.Z. and M.A.L. to see a psychologist to help them deal with their parents' divorce. Petitioner and the girls moved into the home of Petitioner's parents. They had an apartment on the top level of the house and her parents remained on the bottom level. There was some conflict between M.L.Z.'s older sister, M.A.L., and Petitioner's parents regarding discipline. The evidence reflected that M.A.L. has a thyroid condition affecting her hormones and takes special medication. She is also a teenager and has demonstrated adolescent resistance to authority. In approximately May of 2007, Petitioner and her daughters moved to their own home which was very near the house of Petitioner's parents. Since the move, things have been calmer because there are less people in the home.

During 2004, Respondent visited his children in Argentina but was not able to bring the children to the United States during the holidays. He felt that his visits with the children in Argentina were overly restricted. For instance, he was not permitted to take the children overnight. Petitioner believed she needed to further restrict Respondent's visits because, when he took the children, they would miss scheduled appointments with doctors and school activities. Both parties therefore petitioned the Argentine Court for a change in the visitation agreement.

In considering the parties' motions for a revised visitation agreement, the Argentine Court ordered a psychological evaluation of the family.  (Doc. No. 4-2 at pp. 30-31, 47.)  The psychologist's report was read into the record during the Hearing without objection. (Petitioner's Exhibit 25.) According to the report, the psychologist conducted interviews with all four members of the family during 2005. During his interview, Respondent indicated that he voluntarily gave Petitioner custody because he thought the girls needed to be with their mother. He further explained

that he wanted to spend more time with his daughters. In their interviews, both girls stated that they wanted to live with their mother in Argentina but also wanted to have more time with their father. The psychologist concluded that the Court should respect the girls' wishes and allow for more visitation time with Respondent. The psychologist further stated that Respondent should receive some psychological training about how to deal with teenagers so that he would be prepared for their longer visits. In 2006, the Argentine Court issued an Order stating that the children should be permitted to visit Respondent in the United States during school holidays. (Doc. 4-2 at pp. 32-46, 48-55.)

### III.    Visitation and Retention in the United States

Subsequently, the children visited Respondent in the United States for the first time on their summer[1] holiday from December 2006 to January 2007. Respondent returned the girls to Argentina on the agreed upon date. The girls visited Respondent a second time during their winter holiday on July 5, 2007. Petitioner granted written authorization for this trip, "explicitly recording that this authorization has validity up to the twenty-second day of July 2007, date in which the said minors must return to their domicile . . . ." (Doc. No. 4-2 at p. 62.)

On July 21, 2007, Respondent telephoned Petitioner and stated that M.A.L. was returning home to Argentina, but M.L.Z was not because she had decided that she wished to remain in the United States. Petitioner stated, "I never consented to [M.L.Z.] permanently leaving Argentina or living outside of its borders and I expected her return, as [Respondent] and I agreed, on July 22, 2007." (Doc. No. 1-4 at p. 4, ¶ 15.) Petitioner filed a Return of Child Application with the

---

[1] Argentina, being in the Southern hemisphere, has seasons opposite to those in the United States.

Argentine Central Authority for the Hague Convention on August 9, 2007. (Doc. No. 4-2 at pp. 72-87.) She filed a Return of Child Petition with this Court on December 19, 2007. (Doc. No. 1.)

**Conclusions of Law**

### I. The Hague Convention and the ICARA

The Hague Convention was implemented in the United States in 1988 as the ICARA, 42 U.S.C. §§ 11601-11 . The Hague Convention was created with the stated purpose "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Hague Convention, Pmbl. The Convention is designed to restore the pre-abduction status quo and to deter parents from crossing international borders in search of a more sympathetic forum. *Furnes v. Reeves*, 362 F.3d 702, 710 (11th Cir. 2004) (citing *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998)). The United States and Argentina, as signatories to the Hague Convention, are considered "Contracting States."

Pursuant to Article 19 of the Hague Convention and ICARA, 42 U.S.C. § 11601(b)(4), a court's role in applying the Hague Convention is not to resolve the merits of any custody issue. Rather, the court is to determine whether the child was removed or retained wrongfully from the child's habitual residence. *Giampaolo v. Erneta*, 390 F. Supp. 2d 1269, 1275 (N.D. Ga. 2004). To establish that a child has been wrongfully removed or retained, a petitioner must establish by a preponderance of the evidence that:

(1) the child has been removed or retained in violation of the petitioner's "rights of custody," i.e., "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence," either jointly or alone; and

(2)   "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."

*Furnes*, 362 F.3d at 712 (citing Hague Convention, Arts. 3, 5; 42 U.S.C. § 11603(e)(1)(A)).

Once a petitioner satisfies this burden, the child must be returned to her State of habitual residence unless the respondent establishes one of the affirmative defenses provided in Articles 12, 13, or 20 of the Hague Convention.  42 U.S.C. § 11603(e)(2)(A), (B); *Furnes*, 362 F.3d at 712; *Giampaolo*, 390 F. Supp. 2d at 1276.  Depending on the specific exception or affirmative defense being invoked, the respondent must meet his or her burden either by clear and convincing evidence or by a preponderance of the evidence.  42 U.S.C. § 11603(e)(2)(A), (B).  If a respondent satisfies this burden, then the Court "is not bound to order the return of the child . . . ."  Hague Convention, Art. 13.

Since Petitioner and Respondent stipulated to the prima facie case of wrongful retention under the ICARA, this Court considered only whether Respondent established either of his two asserted affirmative defenses.

**II.   Grave Risk of Harm**

Respondent's first asserted affirmative defense was that M.L.Z. should not be returned to Petitioner because there was a grave risk that returning M.L.Z. would cause her physical and psychological harm.  Under this exception, a respondent must establish by clear and convincing evidence that "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."  Hague Convention, Art. 13(b); 42 U.S.C. § 11603(e)(2)(A).  A respondent must come forward with "specific evidence" that a child will be subject to "serious abuse or neglect."  *E.g.*, *Giampaolo*, 390 F. Supp. 2d at 1284;

*Baran v. Beaty*, 479 F. Supp. 2d 1257, 1269 (S.D. Al. 2007) (quoting *Baxter v. Baxter*, 423 F.3d 363, 368 (3d Cir. 2005)).

Respondent did not establish by clear and convincing evidence that M.L.Z. suffered a grave risk of harm in returning to Argentina. During the Hearing, Respondent testified, *inter alia*, that Petitioner would take away sweets that M.L.Z. bought for herself and would take away her cell phone as punishment. He discussed frequent arguments and yelling among Petitioner's family members while Petitioner was living with her parents. He further alleged that M.A.L. would get into fights with Petitioner's family and physical punishment was used as a form of discipline. Assuming this is all true, it does not amount to the level of serious abuse or neglect required under the Hague Convention standard.

To the extent that Respondent testified to more serious incidents of abuse, the Court did not find his testimony credible. Respondent stated that the girls told him that they, particularly M.A.L., were repeatedly beaten by Petitioner's parents. He testified that the girls said they were struck with belts and kicked when they fell to the ground and that they were also denied food. He described several disturbing incidents that the girls allegedly reported. During one such incident, Petitioner's mother supposedly gave M.A.L. a knife with which to kill Petitioner. Another time, Petitioner's parents allegedly hosed M.A.L. down with cold water.

However, Petitioner denied that there was any physical or psychological abuse of the children.[2] Additionally, Petitioner explained that her older daughter experienced typical teenage

---

[2] In support of her contention, Petitioner introduced into the record the sworn statement of her older daughter, M.A.L. (Petitioner's Exhibit 23.) In this statement, M.A.L. said that Petitioner was a good mother and provided a safe and good home for the girls in Argentina. (*Id.*)

angst and suffered from a thyroid condition that sometimes made her emotionally volatile. Petitioner stated her belief in proper and appropriate discipline and denied ever being violent with her children. She also offered direct evidence which refuted Respondent's hearsay testimony and other assertions of psychological and physical abuse. The Court finds this evidence credible.[3]

Based on the filings and the evidence presented during the Hearing, the Court concludes that Respondent has not proven through clear and convincing evidence that M.L.Z. was or will be subject to any abuse, much less serious abuse, at her home in Argentina. Therefore, Respondent has not established the affirmative defense of a grave risk of harm.

### III.    Child's Objection

Respondent's second affirmative defense was that M.L.Z. objected to being returned to Argentina. To prove this exception, a respondent must establish by a preponderance of the evidence that "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention, Art. 13; 42 U.S.C. § 11603(e)(2)(B); *Simcox v. Simcox*, __ F.3d __, 2007 WL 4547728, at *7 (6th Cir. 2007).

Professor Elisa Perez-Vera, the official Hague Convention reporter, has written an explanatory report that is recognized as "the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it." Hague International Child Abduction Convention: Text and Legal Analysis, 51 Fed. Reg. 10,494-01 at 10,503 (Mar. 26, 1986). Regarding the child's objection provision under Article 13 of the Hague Convention, Professor Perez-Vera stated:

---

[3] The *in camera* examination of the minor child further supported the conclusion reached by the Court on this matter.

> [T]he Convention also provides that the child's views concerning the essential question of its return or retention may be conclusive, provided it has, according to the competent authorities, attained an age and degree of maturity sufficient for its views to be taken into account. In this way, the Convention gives children the possibility of interpreting their own interests. Of course, this provision could prove dangerous if it were applied by means of the direct questioning of young people who may admittedly have a clear grasp of the situation but who may also suffer serious psychological harm if they think they are being forced to choose between two parents. However, such a provision is absolutely necessary given the fact that the Convention applies, *ratione personae*, to all children under the age of sixteen; the fact must be acknowledged that it would be very difficult to accept that a child of, for example, fifteen years of age, should be returned against its will. Moreover, as regards this particular point, all efforts to agree on a minimum age at which the views of the child could be taken into account failed, since all the ages suggested seemed artificial, even arbitrary. It seemed best to leave the application of this clause to the discretion of the competent authorities.

The Perez-Vera Report, *Actes et documents de la Quatorzieme Session, 6 au 25 octobre 1980, Tome III, Enlevement d'enfants* at 433, ¶ 30, *available at http://hcch.e-vision.nl/upload/expl28.pdf*. Based on this language, several Courts of Appeal have recognized that "a court may refuse repatriation *solely* on the basis of a considered objection to returning by a sufficiently mature child." *De Silva v. Pitts*, 481 F.3d 1279, 1286 (10th Cir. 2007) (quoting *Blondin v. Dubois*, 238 F.3d 153, 166 (2d Cir. 2001)); *see also Gaudin v. Remis*, 415 F.3d 1028, 1037 (9th Cir. 2005).

Both Petitioner and Respondent testified that M.L.Z. was highly intelligent and a very good student. At Respondent's request, M.L.Z. was briefly interviewed prior to the hearing by Dr. Deborah O. Day, an experienced forensic psychologist. Dr. Day spoke with M.L.Z. for about an hour on January 2, 2008 and was able to make some preliminary findings. She found M.L.Z. to be a bright, articulate, bilingual thirteen year old girl with above average intelligence and maturity. She further concluded that M.L.Z. understood the seriousness of the matter before the Court, had an express opinion about her custody preferences, and developed this opinion prior to arriving to the United States. Dr. Day also stated that she recommended an *in camera* examination of M.L.Z.

After hearing testimony from Respondent, Dr. Day, and Petitioner, the Court granted Respondent's Motion to conduct an *in camera* examination of M.L.Z. over objection of Petitioner[4]. (Doc. No. 25.) The Court conducted the examination of M.L.Z. in Chambers with the court reporter and a judicial law clerk also present.[5] Upon conclusion of this interview, the Court announced the following findings in open court.

M.L.Z. is an extremely bright, mature, and articulate thirteen year old. She has attained an age and degree of maturity making appropriate consideration of her views. She objects to being returned to Argentina and being removed from Respondent's home and gave credible, independent reasons for her decision. For instance, M.L.Z. has been affected by the arguing in her home in Argentina and feels that her home in the United States provides a calmer environment which is better for her. She also enjoys school, friends and sports in her current domicile, and she believes that she will have better opportunities in the United States. M.L.Z. expressed affection for both parents and said that she misses her family and friends in Argentina and would like to visit them during the holidays from her school. However, M.L.Z. made clear that she wants to continue living in the United States with Respondent. Upon conclusion of this interview, the Court exercised its discretion under the Hague Convention and the ICARA to refuse to order the return of M.L.Z. over her objection.

---

[4] Petitioner and Respondent concurred in the manner of the conduct of the examination of the minor child which was discussed with them by the Court before the examination took place.

[5] Any transcript of this *in camera* examination will be filed under seal.

**Conclusion**

Based on the foregoing, the Court **DENIES** the Petition for Return of Child.  (Doc. No. 1.)

The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 7, 2008.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record